[No. F003099. Fifth Dist. May 23, 1984.]

PRESTON THOMAS DUNLAP, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Faith J. Geoghegan Deputy Attorney General, for Defendant and Appellant.

Ralph J. Cook for Plaintiff and Respondent.

**OPINION**

**VAN AUKEN.**\*—The sole issue in this proceeding is whether or not an arresting officer is required to provide, to a suspected drunk driver, an

---

\*Assigned by the Chairperson of the Judicial Council.

additional opportunity to complete either a blood, breath or urine test *after* that driver initially has refused to comply with the requirements of California Vehicle Code section 13353 subdivision (a)(2).[1] As we shall explain, the trial court was in error when it ruled that the police officer was required to "reoffer" the blood test to the respondent herein. Accordingly, we reverse the judgment of the trial court and reinstate the original suspension issued by the appellant herein.

## FACTS

The respondent, Mr. Dunlap, has stipulated that he was lawfully arrested for driving under the influence of alcohol in violation of Vehicle Code section 23152, subdivision (a) on January 15, 1983.

On the date of the arrest, the respondent was advised of his obligations under California Vehicle Code section 13353 to submit to a blood, breath, or urine test when so requested by an arresting officer. This admonition was given by the arresting officer at the scene of the arrest, and the respondent refused to take any test whatsoever.

After this initial refusal, the arresting officer then read to the respondent the complete admonition pursuant to California Vehicle Code section 13353.[2] The officer specifically went through each test available, and received the following answers to the specific questions:

---

[1] Then operative Vehicle Code section 13353 provided in pertinent part:

"(a) (1) Any person who drives a motor vehicle shall be deemed to have given his or her consent to a chemical test of his or her blood, breath, or urine for the purpose of determining the alcoholic content of his or her blood if lawfully arrested for any offense allegedly committed in violation of section 23152 or 23153. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of section 23152 or 23153. The person shall be told that his or her failure to submit to, or the noncompletion of, a chemical test will result in the suspension of the person's privilege to operate a motor vehicle for a period of six months, . . . ."

"(2) The person arrested shall have the choice of whether the test shall be his or her blood, breath, or urine, and the person shall be advised by the officer that he or she has such a choice. If the person arrested either is incapable, or states that he or she is incapable, of completing any chosen test, the person shall then have the choice of submitting to' and completing any of the remaining tests or test, and the person shall be advised by the officer that the person has that choice."

[2] The officer read the following admonishment:

"You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be your blood, breath, or urine. If you . . . if you refuse to submit to a test or fail to complete a test, your driving privilege will be suspended six months or for one year if you have been convicted within the last five years of driving under the influence of alcohol, or, or drugs, or any combination of these including such as a charge reduced to reckless driving. You do not have the right to talk to a lawyer . . . to talk to an attorney, or to have an attorney present before stating whether you will submit to a test, before deciding which test to take or during the administration of the test chosen. If you are incapable of completing the test you chose, you must submit to and complete any of the remaining tests or test. If you refuse to submit to a test the refusal may be used against you in a court of law."

1. Would he (Dunlap) submit to a breath test? Answer: "I don't have to, no."

2. Would he submit to a urine test? Answer: "No."

Would he submit to a blood test? Answer: "No, no blood test."

At this point, with the two refusals already having been made by respondent, the police officer began to transport the respondent to the county jail.

During the journey to the jail respondent informed the officer that he would at this time like to submit to a breath test, and respondent was thus transported to Merced County Medical Center to begin the requested breath test.

After arrival at the medical center, respondent refused to cooperate in the taking of the breath test unless he was provided with the calibrations of the breath testing machine. The officer explained that the records were not then available and respondent subsequently refused to cooperate in the giving of a breath sample.

At this point, the officer once again asked respondent if he would submit to a blood test. Respondent once again refused a blood test.

After further discussion, the officer once again reoffered the urine test to respondent and at this point respondent consented to the giving of an initial urine sample. Respondent voided his bladder at the hospital and the officer then transported respondent to the county jail to comply with the requisite 20-minute observation period necessitated by California Administrative Code, title 17. While en route to the jail facility respondent was informed that he would not be returned to the hospital for a blood test if he could not complete the urine test. Respondent indicated he understood. After the passage of the required 20-minute interval, respondent was then unable to complete the urine sampling. The arresting officer then completed the booking process and reported the "refusal" to the Department of Motor Vehicles in compliance with present regulations. An administrative hearing was held which resulted in the suspension of respondent's driver's license for six months, pursuant to Vehicle Code section 13353.

The trial court issued a writ of mandate setting aside appellant's order, ruling that the arresting officer was required to "reoffer" to respondent the opportunity to submit to a further blood test after he had failed to complete the urine test.

## DISCUSSION

 The trial court is in error.

 There is no provision in Vehicle Code section 13353 requiring an arresting officer to provide extra admonitions or opportunities to complete any chemical testing once the original three tests have been refused. To the contrary, the law of implied consent mandates that an arrestee is required to submit to and complete one of the three tests upon their *first* having been offered to him by an arresting officer.

The fact that an officer initially attempts to accommodate an arrestee's change of intent in submitting to one of the three tests does not give rise to any obligation on behalf of an arresting officer to continue any further with additional opportunities once that person either fails to complete or later refuses the test. (*Morgan* v. *Department of Motor Vehicles* (1983) 148 Cal.App.3d 165, 170 [195 Cal.Rptr. 707].)

 In the instant case, the respondent had refused all three tests on two separate occasions. There is no doubt respondent was informed and aware of the fact that his refusal to submit to a chemical test would result in the suspension of his license. (See *Barrie* v. *Alexis* (1984) 151 Cal.App.3d 1157, 1161 [199 Cal.Rptr. 258].) It is the initial refusal which forms the basis for suspension of the driver's license under Vehicle Code section 13353. (*Barrie* v. *Alexis, supra,* 151 Cal.App.3d 1157, 1162.) Once the driver refuses to take any one of the three chemical tests, the law does not require that he later be given one when he decides, for whatever reason, that he is ready to submit. (*Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591, 598 [130 Cal.Rptr. 91]; *Morgan* v. *Department of Motor Vehicles, supra,* 148 Cal.App.3d 165, 170.)

Since only the respondent herein knows the reasons for his conduct on the date in question, we cannot understand why he believes that he should have been reoffered a further test of his blood alcohol. Simply stated, one offer plus one rejection equals one refusal; and, one suspension.

The judgment is reversed.

Woolpert, Acting P. J., and Martin, J., concurred.